158 So. 13

NEWMAN v. REEMS et ux.

No. 33144.

Oct. 29, 1934.

On Application for Rehearing Nov. 26, 1934.

Joseph Rosenberg and Cyril F. Dumaine, both of New Orleans, for relator.

Herbert W. Kaiser, of New Orleans, for·respondents.

Pomes & McCabe, of New Orleans, for amicus curiæ.

ODOM, Justice.

The plaintiff Newman sought to foreclose, by executory process, a mortgage on the property of defendants, the mortgagors. Notice was served, a writ was issued, and the mortgaged property of the debtors was seized. Whereupon the mortgagors came into court, and alleged that, by reason of their financial embarrassment brought about by the general depression which then prevailed, they were unable to pay their mortgage indebtedness, either in principal or interest. They alleged further that a sale of their property at public auction at that time would be confiscatory and would operate greatly to their prejudice. They invoked the provisions of Act No. 159 of 1934, p. 525, the Louisiana Moratorium Law, and prayed that the sale of their property be postponed until after the second Monday in May, 1936. They prayed that the mortgagee and the civil sheriff be ruled to show cause why the mortgagors should not be given the benefit of the provisions of said act and why the sale should not be postponed according to its provisions. The rule issued, and in answer thereto the mortgagee, for lack of information, denied the mortgagors' allegation that they were unable to pay the mortgage in principal or interest, and then averred that, in event the court should determine that the foreclosure of the property should be postponed, it should fix the amount the debtors should pay monthly on their indebtedness, and to that end the court should

determine the reasonable value of the income from said property or the reasonable rental value thereof, in case no income was being received from it. See section 5 of the act. The mortgagee prayed as follows:

"Wherefore, Respondent prays that plaintiff's petition be dismissed, or, in the alternative, this Court shall fix and determine the reasonable value of the income on said property and shall render a judgment directing and requesting the mortgagors to pay all such income towards the payment of taxes, insurance, interest or the mortgage indebtedness in such manner as shall be fixed and determined by the Court as a condition precedent to the suspension of the laws in the case, and shall further direct that if the mortgagors default in the payment of any of them in such order required on their part to be done, such suspension of the laws shall terminate thirty days after such default and after such termination any Court proceedings may be had under existing laws relating to foreclosure of mortgages. Respondent prays for all general and equitable relief."

When the rule came up for hearing, there was no testimony taken, but it was admitted by all parties that the property was then leased for $65 per month, but that, if the building "was fully rented," it would yield a revenue of $80 per month. From this we understand that all parts of the building were not then leased, but that, if they were, the entire property would produce rentals amounting to $80 per month.

Under this admission, there was judgment ordering the writ of seizure and sale set aside and further ordering that a sale of the property be postponed upon the following conditions: (1) That the debtors deposit in the registry of the court the sum of $10.80 for costs already incurred by the mortgagee in the foreclosure proceedings, and that the debtors pay such other costs as might be incurred; (2) that on October 1, 1934, and on the first day of each month thereafter until the further orders of the court, the debtors should pay to "Samuel J. Victor, agent for the civil sheriff for the collection of rents in these proceedings, for the account of the holder or holders, as aforesaid, the sum of sixty-five and 00/100 dollars * * * which the court fixes as the rental revenue at this time of the property involved * * * which said payments shall be held by the said civil sheriff to be applied (1) towards the payment of past due taxes, (2) towards the reimbursement of any insurance premiums that have been advanced by said holder or holders and to the payment of any insurance premiums that may become due * * * and (3) to the payment to the said holder or holders of any interest on the mortgage sought to be executed on (foreclosed) that has heretofore accrued or that may become due during the term of this stay and postponement."

It was further ordered that all rents, if any, due by tenants prior to October 1, 1934, "are to be collected by Samuel J. Victor, agent for the civil sheriff, and turned over to the civil sheriff to be applied as aforesaid."

It was further ordered that the mortgagors pay to the civil sheriff, in addition to the $65 per month, an amount sufficient to "pay in full the tax or taxes for which said property is to be or is being advertised so as to prevent or stop such advertisement and tax sale * * * during the term of this stay and postponement," and finally ordered:

"That Samuel J. Victor, agent for the civil sheriff, shall collect all rents on the aforesaid property and shall make every effort to rent for the best possible price, any vacant portion of the mortgaged property * * * and that said Samuel J. Victor shall continue as agent for the collection of rents and/or the payments provided for in this judgment and is authorized to rent any portion of the mortgaged property for any sum that may be deemed by him proper and adequate."

In their application for writs, the mortgagors alleged, and in briefs filed in support thereof they contend, (1) that the judgment ordering them to pay $65 per month, which is the total "value of the income on said property," is not "just and reasonable," in that it leaves them nothing with which to pay for repairs and for water and lights for the building, and (2) that the judgment goes beyond the intent and purview of the act, in that it appoints Samuel J. Victor, agent for the sheriff, not only to collect past-due and future rentals, but to take charge of and lease the unoccupied portions of the property for such amounts as he may deem reasonable, thereby, in effect, taking the control and management of the property out of the hands of the mortgagors during the entire period of the stay granted them.

■■ We can grant relators no relief under the first complaint. Section 5, Act No. 159 of 1934, p. 525, provides that the mortgagee may, in case the mortgagor applies for a stay of execution under the provisions of the act, apply to the district court having jurisdiction of the matter for a "determination of the reasonable value of the income on said property, or, if the property has no income, then the reasonable rental value of the property involved, * * * and for judgment directing and requiring such mortgagor to pay all or a reasonable part of such income or rental value in or toward the payment of taxes, insurance, interest, or mortgage indebtedness, at such times and in such manner as shall be fixed and determined and ordered by the court, as a condition precedent to the suspension of the laws in such case." Said section further provides that the court shall thereupon hear the application and that after such hearing "include in the judgment an order directing the payment by such mortgagor * * * of such an amount at such times and in such manner as to the court shall, under the circumstances, appear just and equitable."

The court having determined the "reasonable value of the income" from or "the reasonable rental value of the property involved," it is vested with discretion as to the amount to be paid each month or at other stated intervals by the mortgagors to take care of taxes, insurance, interest, etc. The court may order the mortgagor to "pay all or a reasonable part of such income or rental value" for the purposes stated, "as to the court shall, under the circumstances, appear just and reasonable."

While the trial court is vested with discretion in fixing the amount to be paid by the mortgagor once the value of the income from or the reasonable rental of the property has been determined, the judgment of the trial court is not final, but is subject to review by an appellate court of competent jurisdiction, as provided by section 7 of the act. Whether a trial judge abuses his discretion either in determining the value of the income from the property involved or its reasonable rental

value, or in fixing the amounts to be paid by the mortgagor, is a matter which would necessarily have to be determined on appeal. The case is not before us on appeal, but was ordered up under our supervisory powers. It is too well settled to need citation of authority that "errors as to matters within the judge's discretion are reviewable under appellate, not supervisory, jurisdiction." See cases cited under article 855 et seq. of either Dart's or Marr's annotated Code of Practice.

■ The admissions made by the parties were that the property was yielding a monthly rental of $65, and that not all the space in the building was occupied, and that by leasing the vacant parts a total monthly rental of $80 could be obtained. Presumably the judge thought that an additional sum of $15 per month could be obtained, out of which the mortgagors could pay for repairs, water, and lights.

If this cannot be done, and if the mortgagors cannot otherwise obtain the means to pay such bills as are necessary to be paid in order to keep the property rented, or if conditions should change or emergencies arise at any time during the term of the suspension or stay granted such as to make the court's order no longer "just and reasonable," the mortgagors have their remedy under section 6 of the act. They may at any time apply to the court for a revision of the judgment rendered.

■ On the second ground urged relators are entitled to relief. The judgment, in effect, is a judicial sequestration of the mortgaged property. It is taken out of the hands of the owners, the mortgagors, and turned over to Samuel J. Victor, an agent of the civil sheriff. Victor is not only to collect all past-due and accruing rentals and turn them over to the sheriff, but is to "continue as agent for the collection of rents * * * and is authorized to rent any portion of the mortgaged property for any sum that may be deemed by him proper and adequate."

The act does not specifically provide, nor is there anything within its terms which can reasonably be construed to mean, that the Legislature intended that, when a debtor applies for and is granted a stay of execution or extension of time in which to pay his mortgage indebtedness, his property is to be taken out of his hands, control, and management during the period of the stay or extension granted.

The effect of the judgment granting to the mortgage debtor a stay of execution or extension of time in which to pay the debt, and fixing the terms and conditions on which the stay is granted, is to quash the executory proceedings previously had, release the property from seizure, and turn it back to the owner or those who hold under him. The seizing creditor loses nothing by this because, by the terms of the act, "as a condition precedent to such postponement of such foreclosure sale and suspension of laws relating thereto, the party filing such petition for rule shall pay to the clerk of court * * * for the person foreclosing the mortgage, the expense incurred, not including attorney's fees, which may accrue prior to any postponement or suspension." Furthermore, the judgment staying execution remains in effect only on condition that the mortgagor complies with the requirements exacted of him by the court. The act, in the latter part of section 5, provides that "said judgment shall provide fur-

ther that if the mortgagor or person against whom such order is directed shall default in the payments, or any of them, in such order required, on his part to be done, such suspension of the laws shall terminate thirty days after such default, and after such termination any further proceedings may be had under existing laws relating to the foreclosure of mortgages." So that, if the debtor defaults, the creditor, after the lapse of thirty days from such default, may proceed again as though no stay had been granted. The parties are left in the same situation as they were before any proceeding was had, except that the debtor has the benefit of the stay of execution on condition that he meet the court's requirements. If he does not, the creditor has his remedy "under existing laws relating to the foreclosure of mortgages."

■ Counsel for the seizing creditor filed in this court an exception to the demand of relator for relief on the ground that "the petition and prayer for relief of relator in this honorable court and in the court a quo sets forth no cause or right of action in that Act No. 159 of the Legislature of the State of Louisiana for the year 1934 is unconstitutional." Pomes & McCabe, attorneys, filed a brief as amicus curiæ in support of the exception of no cause of action.

We cannot entertain the exception. When the respondent creditor was ruled into court to show cause why the mortgagor should not be granted a stay of execution as Act 159 of 1934 provides, he made no attack upon the validity of the act. In answer to the rule, he invoked section 5 of it by applying for "a determination of the reasonable rental value of the property involved," and prayed that the court fix the amount to be paid each month by the debtor as a condition precedent "to the suspension of the laws in such case." He thereby acquiesced in the proceeding brought by his debtor, and is in no position now to challenge the validity of the law under which his debtor sought relief.

For the reasons assigned, the judgment under review is set aside in so far as it appoints Samuel J. Victor the agent of the civil sheriff to collect rents and in so far as it authorizes said Victor to rent the property. It is further ordered that the executory proceedings instituted by the mortgage creditor be quashed; that the writ of seizure and sale be set aside; that the civil sheriff release the property from seizure; that the same be restored to the custody, control, and management of the owner; and that the payments stipulated in the judgment be made to the mortgagee direct instead of to the civil sheriff or his agent. In all other respects, the judgment is to remain in effect.

### On Application for Rehearing.

#### PER CURIAM.

On application for rehearing, counsel has called our attention to the verbiage of that part of our decree ordering "that the executory proceedings instituted by the mortgage creditor be quashed, that the writ of seizure and sale be set aside."

Counsel construe this to mean that we have annulled, made void, or set at naught the executory proceeding. The language of the decree is susceptible of that construction. But it was not meant that such interpretation be placed upon it. What we meant was that the

proceedings be temporarily suppressed or suspended and that the execution of the writ of seizure and sale be set aside only for the time being or stayed.

■ We ordered that all payments be made to the "mortgagee." Counsel call our attention to the fact that the mortgage is for $2,-000, and that the holder of one note of the series has not instituted foreclosure proceedings. We overlooked this fact. The owner of the note who has not sought to foreclose is not entitled to any part of the amount which the debtor is ordered to pay monthly. For that reason we should have ordered that the payments be made to the seizing creditor direct, instead of to the mortgagee, and our decree is now corrected so as to make them so payable.

As thus explained and corrected, our decree is correct. Rehearing refused.